# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURTIS HYRAM PASCHAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-1144 |
| ) | Judge Nora Barry Fischer |
| BILLY BERU, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Billy Beru, Inc.'s ("Defendant") Motion to Dismiss *pro se*[1] Plaintiff Curtis Hyram Paschal's ("Plaintiff") Third Amended Complaint. (Docket No. 28). For the following reasons, Defendant's Motion is **GRANTED**; Plaintiff's Third Amended Complaint is dismissed without prejudice, and Plaintiff shall file a Fourth Amended Complaint by May 8, 2009.

**I.   FACTUAL BACKGROUND**

Plaintiff, an African-American male, claims that he was racially discriminated against by Defendant while patronizing one of its eating establishments, Silky's Bar and Grill, in violation of 42 U.S.C. § 1981. (Docket No. 24). Specifically, Plaintiff contends that he was discriminated against because 1) on July 27, 2008, he was rushed while eating and was the only customer to be given a check by the bartender before he ate; 2) on August 10, 2008, a manager refused to talk to Plaintiff about his complaint of racial discrimination and would not give him the name and phone

---

[1] Although Plaintiff is proceeding *pro se*, he is familiar with several of the courts within this district. *See* Civ. A. Nos. 02-01785, 03-00631, 03-00773, 04-01875, 06-00727, 09-00317.

number of a person with whom he could discuss his complaint; and 3) at an unknown time prior to the two aforementioned incidents, Plaintiff was harassed by a white customer while he ate at the restaurant. (Docket No. 24 at 2).

## II. PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, originally filed this complaint against Defendant on August 18, 2008. (Docket No. 1). Plaintiff then filed an Amended Complaint on August 26, 2008. (Docket No. 6). Prior to filing the instant motion, Defendant moved twice to dismiss Plaintiff's claims (*See* Docket Nos. 8 and 16 ), and the Court has permitted Plaintiff to amend his complaint a total of three times. (*See* Docket Nos. 1, 6, 15, 24).

On January 21, 2009, Plaintiff filed a Third Amended Complaint (Docket No. 24) against Defendant, alleging that it discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981. (Docket No. 26 at 1).[2] On February 5, 2009, Defendant filed the instant motion to dismiss on the basis that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 28). Plaintiff filed a brief in opposition to same (Docket No. 32), and the Court held a hearing on March 17, 2009 during which Plaintiff testified, clarifying the factual statements contained in his Third Amended Complaint and the Court heard argument on the pending motion. (*See* Docket No. 39). Accordingly, the motion is now ripe for disposition.

---

[2] The Court notes that Defendant originally brought this claim pursuant to 42 U.S.C. § 2000a (*See* Docket Nos.1, 6, 15). The Third Amended Complaint is Plaintiff's first complaint wherein he asserts a claim under 42 U.S.C. § 1981.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, it is not enough "to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8)(internal quotation omitted). Moreover, factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

In ruling on a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)(internal quotation and citation omitted). "Nonetheless, a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007)(quoting *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)(internal quotation omitted)).

Because Plaintiff is a *pro se* litigant, his pleadings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Furthermore, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* As previously noted, Plaintiff is no stranger to this Court.

3

## IV. ANALYSIS

Plaintiff has brought the instant suit pursuant to 42 U.S.C. § 1981. Section 1981, which prohibits racial discrimination in the making and enforcement of contracts provides:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. "In order to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) [plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)(internal quotations omitted). As to the third element, "[s]ection 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Section 1981 has been applied to discrimination that arises in the context of restaurant service on the basis that general contract principles apply when a customer orders food in a restaurant. As one court has described this contractual relationship:

> a restaurant which opens itself to the public, offering food at set prices, is making an offer. A customer who enters a restaurant and orders such food is accepting the offer, and thus forming a contract. Upon eating the food and paying consideration for it, the customer effectively terminates the contractual relationship.

*Charity v. Denny's, Inc.*, Civ. A. No. 98-0554, 1999 U.S. Dist. LEXIS 11462, *9 (E.D.La., July 26, 1999); *see also Callwood v. Dave & Buster's, Inc.,* 98 F. Supp. 2d 694, 715 (D. Md. 2000)(same). While courts have agreed that contract principles apply to dining transactions, they have defined the specific benefits of the contract on a case-by-case basis that take into account the circumstances of the transaction. *See, e.g.*, *Gilyard v. Northlake Foods, Inc.*, 367 F. Supp. 2d 1008, 1014 (E.D. Va. 2005)(contractual obligations defendant restaurant was obligated to perform included seating plaintiffs, taking plaintiffs' orders, and filling their orders with edible food); *Charity,* 1999 U.S. Dist. LEXIS 11462 at *10 ("[A] customer who enters a restaurant for service is contracting for more than just food. . . [d]ining in a restaurant includes being served in an atmosphere which a reasonable person would expect in the chosen place.").

During the March 17th hearing, Plaintiff further clarified the factual allegations in his Third Amended Complaint, which he believes set forth the basis for his § 1981 claim. (*See generally* Docket No. 39). Nevertheless, Plaintiff has not been able to articulate the specific legal basis for his claim in his brief in opposition to the instant motion or at oral argument. Based on the facts set forth in Plaintiff's Third Amended Complaint and at oral argument, as Plaintiff was not denied service and was able to complete his meal, he is presumably basing his claim on a theory that Defendant violated

§ 1981(b), which guarantees him "the enjoyment of all benefits, privileges, terms, and conditions" of his contractual relationship with the Defendant. However, as detailed herein, Plaintiff has failed to set forth sufficient facts to support his claim that Defendant deprived him of or interfered with his contractual rights in violation of § 1981.

    *A.    The July 27, 2008 Incident*

Plaintiff claims that he was discriminated against in violation of § 1981 based on an incident that took place on July 27, 2008. In his Third Amended Complaint, Plaintiff avers:

> 9.    On Sunday July 27, plaintiff complained to the bartender of Silkys Sports Bar & Grill about being rushed while he ate.
>
> 10.    Plaintiff was the only customer to be given a check by the bartender before eating.

(Docket No. 24 at 2). At oral argument, Plaintiff clarified these allegations:

> I was rushed while I ate. [The bartender] tried to give me my check before I ate. I said, why should I have to pay before eating? And then after I complained, she took the check back and she was trying to rush me. She stood beside me like she was ignoring everybody else in the place and she just made me feel very uncomfortable. I told her that I shouldn't have to pay before eating. Then she took the check back.

(Docket No. 39 at 10). Plaintiff then ate his dinner and did not pay until after he finished eating and drinking. (*Id.* at 13). In regard to other patrons in the restaurant, Plaintiff stated:

> I was sitting at the end of the bar . . . there were some people sitting to my left, but they paid their check after they ate and they left. . . . They were white.

(*Id.* at 12).

Plaintiff has not pled that the bartender requested that he pay for his food prior to receiving it; rather, he only avers that she put his check in front of him before his food arrived. (Docket No.

6

24 at 2; Docket No. 39 at 10).³ Thus, he has failed to plead facts that, if true, would indicate that he was required to enter into the contract with Defendant on discriminatory terms. Moreover, Plaintiff was not required to pay for his food before he received it; rather, he stated that he paid after he finished his meal. (Docket No. 39 at 10). Thus, the case at bar is distinguishable from those cases in which minority patrons were required to pay for their food before receiving it, while white customers were not, thereby altering a fundamental characteristic of the food service contract based on race. *See, e.g.*, *Jackson v. Waffle House, Inc.,* 413 F. Supp. 2d 1338 (N.D. Ga. 2006)*; Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512 (W.D.N.C. 1998); *cf. Hill v. Shell Oil, Co.,* 78 F. Supp. 2d 764 (N.D. Ill. 1999)(defendant gas station's practice of requiring African-American customers to pre-pay for gas, while allowing white customers to post-pay, sufficient to support a § 1981 cause of action).

Furthermore, "a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001)(quotation omitted). While this Court agrees with those courts that have held that "dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased," *Arguello v. Conoco, Inc*., 330 F.3d 355, 360 (5th Cir. 2003), Plaintiff has failed to plead facts that would indicate that he was deprived of *any* benefit of his contractual relationship with Defendant. Thus, Plaintiff's case is distinguishable from cases in which plaintiffs were permitted to pursue their § 1981

---

³ In fact, when he complained that she placed the check in front of him, she took it away. (Docket No. 39 at 10).

claims against restaurants which had failed to provide them with non-food benefits of the contractual relationship. *See, e.g.*, *Eddy v. Waffle House, Inc.*, 482 F.3d 674, 678 (4th Cir. 2007)(*vacated and remanded on other grounds*, 128 S. Ct. 2957 (2008))(restaurant employee's use of racial epithets created an abusive environment that interfered with plaintiff's contractual rights); *McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043, 1046-47 (N.D. Ill. 1998)(African-American plaintiffs not provided with the "full benefits" of the restaurant contract where they were not provided with plates, utensils and drinks offered to white patrons, and were subjected to racial harassment which drove them out of the restaurant prior to finishing their meal); *Perry v. Burger King Corp.*, 924 F. Supp. 548, 551-52 (S.D.N.Y. 1996)(African-American plaintiff stated a cause of action under § 1981 where he was provided with the food he purchased, but was not permitted to use the bathroom, a benefit that was available to the restaurant's white patrons).

In sum, Plaintiff was permitted to carry out his contract with Defendant under the same terms and conditions as white customers. Plaintiff has failed to articulate any facts that would indicate that he was required to enter the contract on discriminatory terms, that the terms of his transaction were fundamentally altered based on his race, or that he was deprived of an actual contract interest. Accordingly, the facts he has set forth regarding the July 27, 2008 incident are insufficient to support a claim under 42 U.S.C. § 1981.[4]

---

[4]

In relation to Plaintiff's now withdrawn 42 U.S.C. § 2000a claim, this Court opined:

the second Amended Complaint sets forth a specific incident that, when viewed in a light most favorable to him, could plausibly form the basis for a suit under 42 U.S.C. § 2000a et seq. Specifically, Plaintiff claims that on or about July 13, 2008, a female bartender required Plaintiff to pay for his food before allowing him to eat,

B.      *Alleged Harassment by a White Customer*

Plaintiff claims that he is also entitled to relief because he was harassed by a white customer at some point prior to the July 27th incident:

> 8.      On a previous visit Plaintiff complained to Silkys bartender and moved to the end of the bar to avoid being harassed by a white customer.

(Docket No. 24 at 2). While the complaints of *pro se* plaintiffs are held to less stringent standards than formal pleadings drafted by lawyers, *McDowell v. Del. State Police*, 88 F.3d 188, 189 (3d Cir. 1996), if a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985). Here, Plaintiff has failed to plead even the *approximate* date of the alleged harassment, the nature of the harassment, or the role of Defendant's employees, if any, in the alleged harassment. Plaintiff was afforded an opportunity to clarify these allegations at oral argument, but failed to do so. (*See generally* Docket No. 39). Moreover, even the most liberal interpretation of Plaintiff's Third Amended Complaint cannot support a claim of discrimination in violation of § 1981 because Plaintiff has failed to plead facts that would indicate that *the Defendant* discriminated against Plaintiff in the context of a contractual relationship. Thus, the facts Plaintiff has set forth regarding his alleged harassment by a white patron are insufficient to state a claim under 42 U.S.C. § 1981.

---

while no Caucasian customers were asked to do the same.

(Docket No. 23 at 3). However, as previously discussed, Plaintiff's Third Amended Complaint and statements at oral argument indicate that Plaintiff, in fact, was not required to pay before he received his food, nor did the bartender ask him to do so.

C. *Failure of Employee to Give Contact Information Regarding Plaintiff's Complaint*

Plaintiff also contends that he is entitled to relief under 42 U.S.C. § 1981 because on August 10, 2008, while having a beer at Defendant's establishment, he was not able to get information he requested about lodging a complaint of discrimination:

> 4. On August 10, 2008 the manager of Silkys Sports Bar & Grill refused to talk to the plaintiff about his complaint of racial discrimination.
>
> 5. On August 10, 2008 the manager of Silkys Sports Bar & Grill refused to give the Plaintiff the name and phone number of the person who could help to resolve his complaint of racial discrimination.

(Docket No. 24 at 2). Again, as with the Plaintiff's other allegations, he has failed to plead facts the support his claims that he was deprived of a contractual right, or that Defendant interfered with his contractual rights, on the basis of his race. Notably, Plaintiff does not contend that he was asked to prepay that day, or that he was treated differently than any of the Defendant's white patrons. Even viewing these allegations in a light most favorable to Plaintiff, the employee's actions, at most, reflect poor customer service; however, they do not constitute a violation of § 1981. *See Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 519 (W.D.N.C. 1998)(allegations of bad service, taken alone, do not satisfy the elements of a 1981 violation, as they do not involve discrimination in making and enforcing contracts).

## V. CONCLUSION

In sum, Plaintiff failed to plead facts that would support his claim that Defendant discriminated against him in the making and enforcing of contracts. Plaintiff has been permitted to amend his complaint three times. At oral argument, he was given the opportunity to clarify his allegations against Defendant, and failed to set forth any facts under which he would have a

cognizable § 1981 claim. Moreover, at oral argument, both parties were directed by the Court to specific case law on this issue, and were permitted to provide the Court with supplemental briefing in support of their positions. (Docket No. 33). Even given these opportunities to maintain his claims, Plaintiff has failed to provide this Court with any valid legal argument as to why his claim should not be dismissed, nor has he provided the Court with any additional facts by which he could cure the deficiencies of his current complaint through amendment. While this Court is mindful that *pro se* complaints are to be held to less stringent standards than those prepared by attorneys, "a judge may not become a surrogate attorney for the party, even one who is proceeding *pro se*." *Taylor v. Diznoff*, 633 F. Supp. 640, 641 (W.D. Pa. 1986)(quoting *Mazur v. Pa. Dept. of Transp.*, 507 F. Supp. 3, 4 (E.D. Pa. 1980), *aff'd* 649 F.2d 860 (3d Cir. 1981), *cert. den.* 452 U.S. 962 (1981)). However, the law of this circuit dictates "that leave to amend must be granted *sua sponte* before dismissing [civil rights] complaints."[5] *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Accordingly, Defendant's Motion to Dismiss [28] is **GRANTED,** and Plaintiff's Third Amended Complaint is dismissed, without prejudice. Plaintiff shall file an amended complaint by May 8, 2009 that cures the deficiencies outlined herein.

---

[5] Although Plaintiff has previously been permitted to amend his complaints, the instant Complaint is the <u>first</u> in which Plaintiff has asserted a claim under 42 U.S.C. § 1981. Thus, as Plaintiff has not previously been granted leave to amend his § 1981 claim, the Court will permit him to amend in this instance.

The Court also reminds Plaintiff that failure to comply with this Court's Orders, Policies and Procedures will result in dismissal for failure to prosecute. An appropriate order follows.

*s/Nora Barry Fischer*
United States District Judge

Dated: April 23, 2009

cc/ecf: Counsel of record

      Curtis Hyram Paschal
      2117 East Carson Street
      Apartment #103
      Pittsburgh, PA 15203
      (Regular & Certified Mail)